**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Charles ABBOTT,
Defendant-Appellant.**

**No. 75–1821.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 21, 1976.

Decided Jan. 6, 1977.

Daniel J. Sears, Denver, Colo., for defendant-appellant.

Robert D. McDonald, Asst. U. S. Atty., Oklahoma City, Okl. (Richard A. Pyle, U. S. Atty., Muskogee, Okl., with him on the brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

LEWIS, Chief Judge.

Appellant, James Abbott, was tried and convicted by a jury in the district court for the Eastern District of Oklahoma for knowingly and unlawfully possessing a .30 caliber carbine not registered to him in violation of 26 U.S.C. § 5861(d). Appellant was sentenced to three years of imprisonment to be served concurrently with state court sentences then being served. During the trial appellant moved to suppress the carbine asserting that it had been obtained through an illegal search and seizure. The trial court denied the motion to suppress premised on a finding that appellant's wife had authoritatively[1] consented to the warrantless search of the trunk of appellant's automobile in which the carbine was found.

Appellant was stopped on March 26, 1974, by Officer Hardin of the Oklahoma Highway Patrol for a registration check of the automobile he was driving. The serial number and description on the registration produced by appellant did not correspond with the automobile he was driving. Hardin also discovered a .45 automatic under the seat of the automobile and arrested appellant for possession of the weapon and illegal registration of the automobile. Appellant was placed in custody in the county jail and his automobile was impounded in a private wrecker service garage.

While appellant was in custody his wife appeared at the impound garage attempting to obtain release of the automobile. The title produced by Mrs. Abbott did not correspond with the automobile's identification number. With the assistance of Officer Hardin, Mrs. Abbott searched the passenger compartment for a small box which she believed contained the title to the automobile. When this search proved unsuccessful, Mrs. Abbott suggested that the box containing the title might possibly be in the trunk of the automobile. After Mrs. Abbott and Officer Hardin were unable to gain access to the trunk, Mrs. Abbott said she would go home, try to find the trunk key, and then return.

While she was gone, a deputy sheriff obtained the trunk key from the lining of appellant's coat pocket in his jail cell and delivered the key to Hardin at the impound garage. Although Mrs. Abbott had not returned to the garage, Hardin opened the trunk and found the small box containing several titles and a .30 caliber carbine which was the subject of this prosecution.

The government makes no claim that the subject warrantless search was justified by any exigency of time or circumstance nor excused within the bounds of *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, or *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000. It relies entirely on the testimony of Officer Hardin to support the claim that Mrs. Abbott gave consent for the search. Hardin testified as follows:

Q. What else did Mrs. Abbott do while you were there, Mr. Hardin?

A. She looked through the car trying to locate a small black or brown cardboard box with several titles in it. She said that another title to this car may be in this box and it would prove ownership and prove it was not stolen.

Q. Did you help her make that search of the car?

A. Yes, sir.

. . . . .

---

1. Since we determine that the government failed to establish a consent search we need not discuss the appellate issue of Mrs. Abbott's *authority* to consent.

Q. Did Mrs. Abbott indicate that the title would be in the trunk?

A. She thought possibly this box containing several titles was in the trunk.

Q. Did you make any effort to get in the trunk yourself or indicate that she wanted to get into the trunk?

A. Yes, sir.

Q. Did you try to get in the trunk?

A. She was asking me about the key, there was only an ignition key in the car and she indicated if she had the key we would look in the trunk. We looked inside the car and under the floor mat possibly for another key, opened the glove box and thought there might be a trunk release in the glove box for that particular car.

Q. Did she make any effort to obtain a key for the trunk herself?

A. She said she was going home and try to find the key and would be back.

Q. In the meantime did you obtain a key from Mr. Abbott's possessions at the jail?

A. Yes, sir.

Q. You opened the trunk with that key, is that correct?

A. Yes, sir.

■ In *Villano v. United States*, 10 Cir., 310 F.2d 680, 684, this court set out the specifics necessary to sustain the burden required of the government to establish justification for a warrantless search. These rules may be paraphrased in the following manner: (1) There must be clear and positive testimony that consent was "unequivocal and specific" and "freely and intelligently" given; (2) the government must prove consent was given without duress or coercion, express or implied; and (3) the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived.

■ Applying these rules to the instant case the government's case must fail. The evidence does not indicate that Mrs. Abbott ever expressly gave her consent to anyone to search the trunk. By initiating the act of searching the automobile, by requesting that it be done to prove proper registration so she could obtain possession of the automobile, and by actively participating in the search herself the government contends Mrs. Abbott effectively consented to a search of the automobile including its locked trunk. We disagree. At the most, she implicitly consented to a search of the automobile in her presence and with her assistance. Her implicit consent to search the passenger compartment in her presence with her assistance does not constitute unequivocal and specific consent to search the locked trunk in her absence. Officer Hardin's testimony that "[s]he thought possibly this box containing several titles was in the trunk" and that she indicated she wanted to get into the trunk is not clear and positive testimony of an unequivocal and specific consent.

■ Each of Mrs. Abbott's statements and actions was made and taken in the shadow of authoritative control, a factor always to be considered when waiver of a fundamental right is to be considered. Here her husband was incarcerated, she had need for the automobile, and she was surrounded by police officers. Since the car was impounded it is unlikely she believed she could search the car in privacy. Such an atmosphere increases the burden of showing a free and uninhibited waiver and consent.

The judgment of conviction is reversed with directions to sustain the motion to suppress and for such further proceedings as are consistent with the decision of this court.