953 F.2d 1392
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin Mark McGANN, Defendant-Appellant.
 No. 91-2171.
 United States Court of Appeals, Tenth Circuit.
 Jan. 29, 1992.
 
 Before LOGAN and BARRETT, Circuit Judges, and KELLY,* District Judge.
 ORDER AND JUDGMENT**
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant Kevin Mark McGann appeals from the district court's entry of judgment following the court's acceptance of his conditional guilty plea. McGann pled guilty to possession with intent to distribute more than fifty kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). He reserved the right to appeal the court's denial of his motion to suppress. McGann also appeals from the court's denial of his motion to reconsider his motion to suppress.
 
 
 3
 McGann was the driver and sole occupant of a 1978 Chevrolet El Camino that entered a Border Patrol checkpoint on U.S. Highway 70, west of Alamogordo, New Mexico, during the early morning hours of November 23, 1991. Agent James A. Stack, who was manning the checkpoint, determined McGann was a United States' citizen. Stack initially became suspicious because he had previously discovered illegal aliens hidden in a similar model El Camino. Therefore, as he was questioning McGann, Stack visually inspected the interior of the car. He could not see a compartment located behind the seat. Instead, he noticed that the carpet was continuous along the back wall and there was a seam where the carpet on the floor and wall were joined. He also noticed that the plastic molding around the windows and door was missing screws in the screw holes, and there were scratches on the molding.
 
 
 4
 Based on his suspicions, Stack asked if he could see behind the seat. McGann replied, "Surely" and left the vehicle. During this initial search, McGann became "very cooperative and very friendly, very talkative." Stack confirmed his suspicion that the vehicle had been altered because the compartment behind the seat had been replaced with a solid wall. He then referred the car to the secondary inspection area and asked for consent to conduct a further search. McGann agreed and signed a consent-to-search form. Stack removed the molding and saw a gray bundle in the area where the compartment should have been. Twenty packages of marijuana weighing 164 pounds were removed.
 
 
 5
 On appeal, McGann argues that the marijuana should have been suppressed. He argues that the search of his vehicle violated his right to be free from unreasonable searches and seizures under the Fourth Amendment because Stack had no probable cause to conduct the search. He further argues that his consent was not voluntary.
 
 
 6
 We will uphold the district court's denial of a motion to suppress evidence unless that decision was clearly erroneous. We view the evidence in the light most favorable to the government. United States v. Johnson, 895 F.2d 693, 696 (10th Cir.1990).
 
 
 7
 Border patrol agents at a permanent checkpoint may question a driver about his citizenship and may ask him to explain suspicious circumstances. United States v. Espinosa, 782 F.2d 888, 891 (10th Cir.1986). Detention and search beyond the initial questioning, however, requires "reasonable suspicion." United States v. Carreon, 872 F.2d 1436, 1440 (10th Cir.1989).
 
 
 8
 Stack testified his suspicions were raised not only by the type of vehicle McGann was driving, but also because he could not see the compartment behind the seat and because the carpeting was continuous over the area where the compartment should have been. McGann argues that Stack's suspicions could only have been raised after McGann left the vehicle because Stack could not have seen the seam during his initial visual inspection due to two suitcases behind the seat which hid the carpet seam. McGann also argues Stack could not have seen that screws were missing because the molding on an El Camino snaps on and does not require screws except at the bottom of the door, an area which cannot be seen unless the door is open. Therefore, McGann concludes the initial request to search was not based on reasonable suspicion.
 
 
 9
 We disagree. Stack clearly articulated the factors which aroused his suspicions. The fact that Stack had prior experience that the type of vehicle involved had been used in transporting illegal aliens gave him sufficient reason to visually inspect the area behind the seat while he was questioning McGann regarding his citizenship. While it apparently was somewhat difficult to see that area, the district court found Stack's testimony that he could see the area credible. We are bound by the district court's determination of credibility unless that determination is clearly erroneous. United States v. Erickson, 732 F.2d 788, 790 (10th Cir.1984). No such error is present here.
 
 
 10
 "So long as [the border patrol agent's] interrogation bears a reasonable relationship to their unique duties, the judiciary is properly reluctant to interfere, and a reviewing court should only determine whether the suspicious circumstances as perceived by the border patrol agent are supported by the facts." United States v. Sanders, 937 F.2d 1495, 1500 (10th Cir.1991), petition for cert. filed, (U.S. Dec. 23, 1991) (No. 91-6804). Clearly, Stack's suspicions were based on identifiable facts and bore a reasonable relationship to his duties.
 
 
 11
 McGann argues his consent to conduct the initial search of the vehicle was not valid because he did not feel free to refuse. A consent to search is valid if it is voluntarily given and is not the product of duress or coercion, express or implied. Espinosa, 782 F.2d at 892 (citing United States v. Lopez, 777 F.2d 543, 548 (10th Cir.1985)). "Whether a consent to search is voluntary or was a product of duress or coercion is a question of fact to be determined from the totality of the circumstances." United States v. Benitez, 899 F.2d 995, 998 (10th Cir.1990) (citing United States v. Mendenhall, 446 U.S. 544, 557 (1980); Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)).
 
 
 12
 McGann replied, "Surely" when Stack asked if he could look behind the seat. McGann argues the word "surely" is ambiguous because it could have meant either "Surely, I mind if you look," or "Surely, you may look." We reject this argument. McGann's voluntary consent is shown not only by his words but also because he freely left the vehicle and stood at the rear of the vehicle talking while the search was being conducted. There is no indication McGann objected to the search.
 
 
 13
 McGann further argues his consent was invalid because he felt compelled to consent due to Stack's position of authority. A law enforcement officer's position of authority alone does not mean a suspect's consent to search is involuntary. Cf. United States v. Werking, 915 F.2d 1404, 1408 (10th Cir.1990) (consent is freely given when the individual is free to leave, i.e., no threatening presence of several officers, no display of weapons, no touching of the individual, or language use indicating compliance with request would be compelled) (citing Mendenhall, 446 U.S. at 554). McGann does not argue he was not free to leave.
 
 
 14
 Stack's referral of the vehicle to the secondary inspection area was also proper. "Border patrol agents have 'virtually unlimited discretion to refer cars to the secondary inspection area.' " Sanders, 937 F.2d at 1499 (quoting INS v. Delgado, 466 U.S. 210, 221, 224 n. 6 (1984) (Powell, J. concurring)). Not only was Stack's decision supported by physical alterations in the vehicle, but, as Stack was conducting the initial search, McGann became very talkative indicating either nervousness or an attempt to distract Stack from the search.
 
 
 15
 McGann argues his consent to the second search was also invalid because he was threatened with having his car cut with torches if he did not consent. He also argues he did not sign the consent form until the search had been completed which was the same time he signed the form acknowledging that he had received his Miranda warnings. The district court found that McGann was not credible on either argument based in part on the documents themselves which showed they were signed at different times.
 
 
 16
 Upon reviewing the evidence in the light most favorable to the district court's determination and giving due deference to the court's findings of credibility, we hold that the court's denial of the suppression motion was not clearly erroneous. See Benitez, 899 F.2d at 998.
 
 
 17
 The district court did not abuse its discretion in denying McGann's motion to reconsider his suppression motion. In this motion, McGann argued that Stack could not have seen the carpet seam in the vehicle with the suitcases in place. McGann hired an investigator to recreate the scene as it allegedly existed the night of the arrest to support his position. McGann also submitted pictures of the recreated situation. The court denied the motion determining that it was "not well-taken."
 
 
 18
 The judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 *
 Honorable Patrick F. Kelly, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3